# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GE HER, | ) 1:09cv01499 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Ge Her ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on April 17, 2006, alleging disability since January 1, 2005, due to chest, head, neck and back pain, severe food allergies and an ulcer. AR 97-100, 109-115. After her application was denied initially and on reconsideration, Plaintiff requested a hearing

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

before an Administrative Law Judge ("ALJ").  AR 47-55, 56-63, 76.  ALJ Sharon L. Madsen held a hearing on July 17, 2008, and denied benefits on September 3, 2008.  AR 11-21, 22-46.  The Appeals Council denied review on June 26, 2009.  AR 1-3.

Hearing Testimony

ALJ Madsen held a hearing on July 17, 2008, in Fresno, California.  Plaintiff appeared with her attorney, Melissa Proudian, and an interpreter.  Vocational expert ("VE") Cheryl Chandler also appeared and testified.  AR 11, 22.

Plaintiff testified that she was 41 years old at the time of the hearing.  She lives with her husband and five of her 10 children AR 26-27.  She has a driver's permit and used to drive with someone in the car.  She now relies on others for transportation, but can use the bus.  AR 28, 30.  Plaintiff does not do any housework or cooking.  AR 28-29.  She shops with her children.  AR 29.  Plaintiff's pain prevents her from watching television.  She does not go to church and does not visit friends, though friends may visit her.  AR 29-30.

During an average day, Plaintiff doesn't do anything because of pain and weakness in her arms.  AR 30.  She cannot read or write in any language and has not worked since she came to the United States.  AR 30-31.

Plaintiff explained that the pain in her arms is caused by her muscles and that she has constant weakness and pain.  Her right arm is worse.  She takes medicine for the pain.  Plaintiff saw a doctor for massage, but it did not help.  She also uses heat and ice.  AR 31-32.

Plaintiff also has pain from a stomach ulcer and pain in the back of her neck that "comes through the chest."  She feels "tight in her body, pain in my leg, my neck, headaches."  She believes her pain is getting worse and that nothing can cure it.  AR 32-33.

Plaintiff testified that she no longer goes to Mental Health because "they told [her] to stop going there."  She is still depressed and has trouble sleeping because of pain.  AR 33.  Her pain also causes trouble with concentration and memory.  AR 33-34.  Plaintiff takes medication for her depression at night so she can sleep.  AR 34.  She lays down about three times per day but cannot lay down for long because of pain.  AR 36.

Plaintiff estimated that she could lift a small container of milk with her left hand, but not with her right hand. She thought that she could sit 20 to 30 minutes and could stand for 20 minutes. AR 34-35. Plaintiff thought that she could walk for about a half block. She cannot bend to touch her toes, but could touch her knees. AR 35. She cannot reach overhead with her right arm and cannot climb stairs. AR 36.

For the first hypothetical question, the ALJ asked the VE to assume a person of the same "age, education, language," and experience (no prior jobs) as Plaintiff. This person could lift 50 pounds occasionally, 25 pounds frequently, sit, stand and walk for six hours per day and perform simple, routine tasks. The VE testified that this person could perform jobs at the unskilled medium, light and sedentary levels "limited only by the language factor." The VE testified that positions for such an individual would include the medium positions of vehicle/equipment cleaning, material handler and hand packager. AR 40-41. The ALJ asked how the language barrier would affect the number of available positions and the VE testified that these positions would not be impacted by language factors. AR 41-42.

For the second hypothetical, the ALJ asked the VE to assume that this person could perform work at the light level, i.e., lift 20 pounds occasionally, 10 pounds frequently, sit, stand and walk for six hours and perform simple, routine tasks. The VE testified that this person could perform unskilled light and sedentary jobs. The same positions identified in the first hypothetical would be available, with different numbers. For example, this person could perform the positions of vehicle cleaner (9,300 jobs), materials handler (6,700 jobs), hand packager (31,800) and assembly jobs (34,000 jobs). AR 42.

If this same individual is lowered to a sedentary level, i.e, lift and carry 10 pounds occasionally and frequently, sit for six hours, stand or walk for two to four hours, with the added limitation of occasional lifting with the nondominant upper extremity at or above shoulder level and a limitation to simple, repetitive tasks, the VE testified that this person could perform the positions of hand packaging (2,000), material handler (4,500 jobs) and production worker (5,500 jobs). AR 42-43.

1    Plaintiff's attorney asked the VE to assume the person in the second hypothetical, with an
2 added limitation to concentration in increments of less than 30 to 40 minutes.  The VE testified
3 that this person could not perform any work.  AR 43.
4    If this person needed two to three additional rest breaks, this person could not perform
5 any work.  AR 44.
6    The ALJ concluded the VE's testimony by asking if her testimony was consistent with the
7 Dictionary of Occupational Titles ("DOT").  The VE testified that is was.  AR 44.

    <u>Medical Record</u>

Plaintiff's sole issue is a legal issue and does not require any analysis of the medical record.  The parties do not contest the ALJ's recitation of the medical evidence.

    <u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of arthralgia, minimal thoracic degenerative disc disease, migraine headaches, peptic ulcer disease and depressive disorder.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours, sit for six hours and perform simple, routine tasks.  The ALJ determined that Plaintiff had no past relevant work and could not communicate in English.  With this RFC, the ALJ relied on the testimony of the VE in finding that Plaintiff could perform the light, unskilled positions of vehicle cleaner, material handler, hand packager and assembler.  The ALJ noted that pursuant to SSR 00-4p, the VE's testimony was consistent with the DOT.  AR 13-21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  <u>42 U.S.C. 405</u> (g).  Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (arthralgia, minimal thoracic degenerative disc disease, migraine headaches, peptic ulcer disease and depressive disorder) based on the requirements in the Regulations (20 CFR §§ 416.920(b));

---

[2] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

5

1  (3) does not have an impairment or combination of impairments which meets or equals one of the
2  impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) had no past relevant
3  work; but (5) retains the RFC to perform a significant number of jobs.  AR 13-21.
4    Here, Plaintiff argues that the ALJ erred at step five by determining that Plaintiff could
5  perform the positions identified by the VE.

## DISCUSSION

Plaintiff argues that because she cannot communicate in English, the ALJ erred by finding that she could perform other work in the national economy.

At the outset of the ALJ's questioning of the VE, she asked the VE to assume a "hypothetical person of the same age, education, language" and work background as Plaintiff. AR 40.  After setting forth a medium RFC in the first hypothetical, the VE testified that this person could perform medium positions "limited only by the language factor."  Examples of work for "such an individual" included vehicle/equipment cleaning (25,400 jobs), material handler (56,000 jobs) and hand packaging (16,200 jobs).  AR 41.  The ALJ asked how the "language barrier" would affect these positions and the VE stated, "Those jobs provided would not be impacted by the language factors."  AR 41-42

The ALJ then went on to ask the second hypothetical, which included the light RFC she ultimately adopted.  The VE testified that this person could perform unskilled light and sedentary jobs. "In the categories previously provided, there are positions, just different numbers."  AR 42.  For example, this person could perform the positions of vehicle cleaner (9,300 jobs), material handler[3] (6,700 jobs) and hand packager (31,800 jobs).  The VE also identified the position of assembler (34,000 jobs).  AR 42.

Indeed, the ALJ must determine whether the positions cited by the VE are consistent with the DOT.  The ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether there exists a basis for accepting the VE's testimony over the information

---

[3] Plaintiff contends, and Defendant agrees, that "material handler" is not identified in the DOT.  The VE also recognizes this during the hearing by stating, "I don't have the DOT for that category."  AR 42.  Despite this, the VE identified three other positions with a combined total of 75,100 positions.  Plaintiff does not contend that 75,100 jobs is not a substantial number of positions.

6

contained in the DOT. *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Where a claimant is illiterate, the ALJ must "definitively explain the deviation." *See Pinto v. Massanari,* 249 F.3d 840, 847 (9th Cir. 2001). In *Pinto*, the Ninth Circuit explained:

> The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision. These are all factors that Social Security Ruling No. 96-8P requires an ALJ to consider when determining whether a claimant has the residual functional capacity to perform past relevant work. **Here the ALJ, although noting Pinto's limitation in both his findings of fact and hypothetical to the vocational expert, failed to explain how this limitation related to his finding that Pinto could perform her past relevant work as generally performed.** See SSR 82-62.

*Id*. at 846-847 (emphasis added).

Plaintiff contends that the positions identified for the hypothetical ultimately adopted require Language Levels in excess of her capabilities. For example, pursuant to the DOT numbers identified by the VE, hand packager, vehicle cleaner and assembler are listed at Language Level 1, which requires the ability to recognize 2,500 words and read at a rate of 95-120 words per minute. Exhibit A, attached to Opening Brief. While Plaintiff concedes that the ALJ "discussed" the deviation from the DOT for the medium positions, she contends that "the lack of explanation of the actual occupations found applicable in this matter is legal error." Opening Brief, at 7.

The Court agrees that the finding is not supported. Although the ALJ asked about the language issue, the VE's statement that the medium positions "would not be impacted by the language factors" is not a definitive explanation of the deviation as required by *Pinto*. AR 41-42. As the positions identified for the second hypothetical were pulled from the same pool as those for the first hypothetical, the VE's testimony is similarly insufficient.

Moreover, although the ALJ asked whether the positions identified by the VE were consistent with the DOT, the VE's answer in the affirmative is unsupported. Of course, someone who is illiterate does not have the ability to recognize the meaning of 2,500 words and read at a rate of 95-120 words per minute. The VE therefore failed to recognize the conflict and failed to offer any explanation for the deviation.

Defendant's argument in support of the ALJ's findings misses the mark. Defendant focuses on the nuances of the VE's testimony and argues that the VE "planned to give census numbers of available jobs at each exertional level, for people with Plaintiff's limitations, including her *language limitation*." Opposition, at 6. The issue is not whether the VE intended for her language limitation to apply to the positions identified in the second hypothetical, but rather whether the deviation was acknowledged and adequately explained. So while the VE noted that the positions would be eroded by Plaintiff's language limitation, she did not provide a definitive explanation for the deviation as required by *Pinto*. See also Diaz v. Astrue, 2009 WL 176316, *4 (C.D. Cal. 2009) ("Although the ALJ took into account plaintiff's English-language illiteracy in the RFC finding and the hypothetical question asked to the vocational expert, the jobs cited by the vocational expert and relied upon by the ALJ, which require at least Language Level 1 proficiency, deviated from plaintiff's noted limitations without **persuasive evidence to support the deviation**.") (emphasis added); Mora v. Astrue, 2008 WL 5076450, *4 (C.D. Cal. 2008) (Although ALJ included plaintiff's illiteracy in his hypothetical posed to the VE, the VE failed to explain the impact it has on her ability to perform her prior work and failed to account for the deviation from the Language Level 1 requirement set forth in the DOT);

Accordingly, the ALJ's finding at step five is not supported by substantial evidence and is not free of legal error.

## CONCLUSION

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." Id. (citation omitted); see also Varney v. Secretary of Health & Human Serv., 859

F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

The Court has determined that the ALJ erred in finding that Plaintiff could perform other work in the national economy. The Court finds that this error can be corrected with further proceedings. On remand, the ALJ shall make a specific finding as to Plaintiff's literacy and sufficiently explain any deviation from the DOT.

The Court therefore finds that this action should be remanded for further analysis at step five.

**ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Ge Her, and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 3, 2010**                    **/s/ Dennis L. Beck**
                                                        UNITED STATES MAGISTRATE JUDGE